IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SHALISE A., <br><br>  Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br>  Defendant. | CV 18-60-M-JCL <br><br> ORDER |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq. and 1381 et seq. Plaintiff protectively filed her claim in June 2014, alleging disability since October 10, 2010. Plaintiff's claim was denied initially and on reconsideration, and by an Administrative Law Judge after an administrative hearing. The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

1

Plaintiff was 27 years old on her alleged onset date, and 33 years old at the time of the ALJ's decision in October 2016.

I. **Legal Standard**

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004) (quoting 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in

2

the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, however, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v).

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

## II. Discussion

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the October 10, 2010 alleged onset date. At step two, the ALJ found that Plaintiff had two severe impairments: degenerative disc disease and scoliosis. The ALJ concluded at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments, 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ further found that while

Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her statements regarding the severity of those symptoms were not entirely consistent with the medical and other evidence of record. The ALJ determined that Plaintiff had the residual functional capacity to perform a reduced range of light work. The ALJ concluded at step four that Plaintiff could not perform any past relevant work, but found her not disabled at step five because there were other jobs in the national economy that she could perform. (Doc. 8, at 24- 32).

Plaintiff argues the ALJ's decision is not supported by substantial evidence, and raises three issues on appeal. First, Plaintiff contends the ALJ erred at step three by finding she did not meet or equal the criteria of a listed impairment. Second, Plaintiff maintains the ALJ did not provide sufficiently clear and convincing reasons for discrediting her subjective symptom testimony. Finally, Plaintiff argues the ALJ erred in relying on vocational expert testimony elicited in response to an incomplete hypothetical question. The Court addresses each argument in turn.

### A. Listed Impairments

Plaintiff argues the ALJ erred at step three by finding that her degenerative disc disease and scoliosis, either alone or in combination, did not satisfy the criteria

for presumptive disability under Listing 1.04 for disorders of the spine. At this third step in the sequential evaluation process, the ALJ must consider whether the claimant's impairment, or combination of impairments, meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).

To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. §§ 404.1525(d) and 416.925(d). To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404. 1526(a) and 416.926(a). The "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that her impairments meet or medically equal all of the criteria of a listed impairment. See *Tackett v. Apfel,* 4180 F.3d 1094, 1099 (9th Cir. 1999).

To meet or equal the requirements of Listing 1.04, a claimant must establish the presence of a spinal disorder "resulting in compromise of a nerve root

(including the cauda equina) or the spinal cord" with at least one of the following: evidence of nerve root compression (paragraph A); spinal arachnoiditis (paragraph B) or; lumbar spinal stenosis resulting in the inability to ambulate effectively (paragraph C). 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. The ALJ found that "the record [did] not contain evidence of disorders of the spine described in Listing 1.04 (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." (Doc. 8, at 27).

Plaintiff argues this step three determination directly contradicts the ALJ's step two finding that her degenerative disc disease and scoliosis are severe impairments. Plaintiff maintains the ALJ inconsistently found at step three that the record did not contain any evidence of degenerative disc disease. But Plaintiff misreads the ALJ's step three finding. Having determined at step two that Plaintiff's degenerative disc disease and scoliosis were severe impairments, the ALJ permissibly found at step three that those impairments did not meet the level of severity described in Listing 1.04.

Plaintiff takes issue with the fact that the ALJ did not provide a more detailed analysis of Listing 1.04, pointing out that he mentioned the listing only

7

once in his analysis. The ALJ addressed Listing 1.04 in a single sentence and did not make any specific findings with respect to the requirements contained in paragraphs A, B, and C. Although the ALJ did not make specific findings at step three, he thoroughly discussed and evaluated the evidence supporting his step three determination elsewhere in the decision. See *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (an ALJ is not required to make specific findings at step three, as long as the decision as whole reflects that he discussed and evaluated the evidence supporting the step three determination). It also worth noting that at the administrative hearing, Plaintiff's attorney did not assert that Plaintiff met Listing 1.04 or present any evidence in effort to establish equivalence. See *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (unless the claimant presents evidence in an effort to establish equivalence, the "ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination"). Thus, under the circumstances, the ALJ was not required to provide a more detailed step three analysis or make specific findings as to why Plaintiff's impairments do not meet or equal Listing 1.04.

Focusing next on the ALJ's evaluation of the underlying medical records, Plaintiff argues the ALJ's step three determination is not supported by substantial evidence. To satisfy Listing 1.04, Plaintiff must first present evidence of disorder

8

of the spine "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. In finding that Plaintiff did not satisfy this threshold requirement, the ALJ considered the results of several MRI scans showing only mild and minor abnormalities during the relevant period. (Doc. 8, at 29). In October 2010, Plaintiff was working as a certified nursing assistant in a nursing home and injured her back while lifting a patient. (Doc. 8, at 1072). The ALJ discussed records reflecting that Plaintiff's initial symptoms improved with physical therapy, and in May 2011 an examining physician noted that an MRI scan of the lumbar spine demonstrated a "mild disc bulge." (Doc. 8, at 28-29, 1084). In May 2014, a lumbar spine MRI scan demonstrated minor right foraminal effacement at the L3-4 level; mild right foraminal effacement and minor central stenosis at the L4-5 level; mild facet hypertrophy and minor foraminal effacement at the L5-S1 level, and no high-grade foraminal stenosis. (Doc. 8, at 29, 1071). Approximately two years later, in March 2016, another series of MRI scans revealed diffuse disc bulges at the L3-S1 levels with no evidence of spinal cord impingement or severe foraminal narrowing. (Doc. 8, at 29, 1259-60). The ALJ found that the results of these MRI scans did "not show evidence of a continued deterioration of [Plaintiff's] spine, further suggesting her condition was not as severe as she described." (Doc. 8, at 29). These MRI

scans constitute substantial evidence supporting the ALJ's finding that Plaintiff did not have a disorder of the spine "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" as required to satisfy the threshold requirement of Listing 1.04.

Even assuming the ALJ erred in finding that Plaintiff did not satisfy this threshold requirement, Plaintiff cannot meet Listing 1.04 without also demonstrating that she satisfies the criteria in paragraph A, B, or C. Plaintiff does not maintain there is any evidence of spinal arachnoiditis as required by paragraph B. Instead, she argues the ALJ overlooked evidence establishing that she satisfies the criteria of paragraphs A and C.

Paragraph A requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss…accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. 404, subpt. P, app. 1, § 1.04A. Plaintiff argues the ALJ overlooked evidence of motor loss because there is some mention of sciatica in the medical records (doc. 8, at 1042, 1048), and overlooked a straight-leg raising test performed in January 2011 that caused "mild anterior thigh pain" on the left. (Doc. 8, at 1086). But Plaintiff does not point to any evidence of underlying nerve-root compression or limitation

of motion of the spine. Moreover, as the ALJ discussed, Plaintiff's recent treatment notes describe mostly normal physical examinations without descriptions of debilitating pain or greatly reduced ranges of motion. (Doc. 8, at 29). The ALJ also discussed medical records reflecting that her pain and range of motion improved with physical therapy, and by March 2011 she had minimal pain while exercising, exhibited full ranges of motion, had good functional mobility, and was able to lift and carry 60 pounds. (Doc. 8, at 29).

Plaintiff next argues the ALJ overlooked evidence relating to Paragraph C, which requires evidence of "[l]umbar spinal stenosis…resulting in inability to ambulate effectively." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. The "inability to ambulate effectively means an extreme limitation of the ability to walk," and "is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b. Plaintiff does not point to any evidence that she requires an assistive device for walking, and the Court sees none. (See e.g. Doc. 8, at 243, 307, 347, 366, 1198). And while Plaintiff's gait was sometimes described as slow and protected (doc. 8, at 158), it has more frequently been described as normal. (See e.g. Doc. 8, at 280, 718, 746, 765, 786, 817, 833, 892, 902). As the ALJ noted,

11

Plaintiff's "more recent treatment notes describe mostly normal physical examinations without descriptions of debilitating pain or greatly reduced ranges of motion" an she was "able to walk normally" during a January 2016 physical examination. (Doc. 8, at 29, 1223-45). To the extent Plaintiff argues her own subjective testimony demonstrates she cannot ambulate effectively, the ALJ discounted that testimony for clear and convincing reasons as set forth below.

Further, the ALJ accurately recognized that no medical source of record found that Plaintiff met or equaled the criteria of any listed impairment, including Listing. 1.04. (Doc. 8, at 27). To the contrary, the ALJ's step three determination is consistent with the opinions of state agency physicians, both of whom concluded that Plaintiff's impairments did not meet the criteria of Listing 1.04. (Doc. 8, at 399, 411)). The Court finds that Plaintiff has not met her burden of showing that his impairments meet or are medically equal to Listing 1.04. The Court thus concludes that the ALJ's step-three analysis is supported by substantial evidence and free of error.

### B. Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide sufficiently clear and convincing reasons for discounting her subjective symptom testimony.

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found that Plaintiff met her initial burden because she produced evidence that she has medically determinable impairments that could reasonably be expected to cause her alleged symptoms. The ALJ then found that Plaintiff's subjective statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 8, at 28).

The ALJ discounted Plaintiff's subjective testimony in part because her daily activities suggested her pain and limitations were not as severe as she alleged. Plaintiff testified that she has constant severe pain in her lower back and cannot walk without a limp for more than a block, cannot stand for more than five

to ten minutes without changing position, and cannot sit for more than five to twenty minutes without having to alter her position. (Doc. 8, at 49-50). Plaintiff completed a functional report similarly stating that she has difficulty standing, walking, or sitting for long periods. (Doc. 8, at 623). She further indicated that it is painful for her to bend a lot, squat, or do any twisting. (Doc. 8, at 623).

The ALJ noted that despite her subjective complaints, Plaintiff maintained an active daily routine that included cleaning, cooking simple meals, caring for her children, using a computer, shopping, and driving an automobile. (Doc. 8, at 28, 623-629). The ALJ found it particularly notable that Plaintiff testified at the hearing that she provides daily care and support for her three children and her boyfriend's three children, aged 11, 9, 8, 6, 5, and 1. (Doc. 8, at 29, 44). The ALJ reasonably found these daily activities were not entirely consistent with Plaintiff's testimony as to the severity of her symptoms. See *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may discredit a claimant's subjective complaints based on inconsistencies between the claimant's described limitations and claimant's activities of daily living); *Trevizo v. Berryhill*, 862 F.3d 987, 998 (9th Cir. 2017) (with sufficiently specific findings, an ALJ may rely on childcare as an activity inconsistent with disabling limitations).

The ALJ further found that Plaintiff's allegations of disabling pain and limitations were not entirely consistent with the objective medical evidence. (Doc. 8, at 28). For example, the ALJ discussed records reflecting that in March 2011 – six months after her alleged onset date – Plaintiff exhibited full ranges of motion "without hesitation," her functional mobility was "good", and she had improved her strength with exercise and was able to lift and carry sixty pounds. (Doc. 8,

The ALJ also discussed medical records reflecting that Plaintiff's more recent physical examinations were mostly normal and imaging results showed only mild abnormalities. (Doc. 8, at 29, 1223-45). For example, while Plaintiff claimed to have difficulty walking, sitting, and standing for more than a few minutes at a time, the ALJ noted that in January 2016, examinations of her neck and lower back were normal with only a mild lumbar muscle spasm, she could walk normally, and she exhibited normal extremity muscle tone. (Doc. 8, at 29, 1242-44). The ALJ permissibly discounted Plaintiff's testimony in part because it was not consistent with the medical evidence. See *Carmickle v. Comm'r, soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects").

To the extent the ALJ accepted Plaintiff's allegations, he accounted for her functional limitations by restricting her to light work with various postural, manipulative, and environmental restrictions due to her scoliosis and degenerative disc disease. To the extent the ALJ discounted Plaintiff's subjective testimony, the Court finds that the ALJ provided sufficiently clear and convincing reasons, supported by substantial evidence, for doing so.

### C. Vocational Expert

Plaintiff argues the ALJ's residual functional capacity finding and the resulting hypothetical question were incomplete, and the vocational expert's testimony consequently had no evidentiary value for purposes of satisfying the ALJ's step five burden of demonstrating that Plaintiff could perform other work in the national economy. In particular, Plaintiff maintains the ALJ's hypothetical question did not adequately account for her pain and ambulatory issues.

As discussed above, however, the ALJ properly discounted Plaintiff's subjective testimony as to the severity of her pain and her functional limitations. To the extent the ALJ accepted that Plaintiff's impairments caused her pain and limitations, the ALJ took that into consideration in the residual functional capacity finding by limiting Plaintiff to a range of light work. For the reasons set forth above, the Court find that the ALJ was not required to include any additional

imitations in the residual functional capacity assessment, which was supported by substantial evidence. See *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). The ALJ permissibly found based on the vocational expert's testimony that Plaintiff was not disabled at step five.

IV. **Conclusion**

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is affirmed.

DATED this 7th day of June, 2019.

_____
Jeremiah C. Lynch
United States Magistrate Judge